| | |
|---|---|
| **DISTRICT COURT, ADAMS COUNTY, COLORADO**<br>Adams County Justice Center<br>1100 Judicial Center Drive<br>Brighton, CO 80601 | DATE FILED: November 2, 2023 1:56 PM<br>FILING ID: 5C1EC1958AA2F<br>CASE NUMBER: 2023CV31576 |
| Plaintiff:    **CAROLYN DROTAR**<br><br>v.<br><br>Defendants: **HOBBY LOBBY STORES, INC.; RYAN, LLC; THORNTON DEVELOPMENT, L.L.C.; and TSG ASSET HOLDINGS, LLC d/b/a TSG PROPERTIES, INC.** | ▲COURT USE ONLY▲ |
| **Attorneys for Plaintiff:**<br>Nathan T. Mattison, #38627<br>Alissa M. Peashka, # 43645<br>Law Offices of Dianne Sawaya, LLC<br>4500 Cherry Creek Drive South, Suite 1030<br>Denver, CO 80246<br>Phone Number: (303) 758-4777<br>Fax Number: (303) 758-4779<br>E-mail: nmattison@dlslawfirm.com;<br>           apeashka@dlslawfirm.com | Case Number:<br><br>Division:<br><br>Courtroom: |
| **COMPLAINT** | |

Plaintiff, Carolyn Drotar **("Plaintiff")**, by and through counsel, for her Complaint against the Defendants [(1) Hobby Lobby Stores, Inc.; (2) Ryan, LLC; (3) Thornton Development, L.L.C.; and (4) TSG Asset Holdings, LLC d/b/a TSG Properties, Inc. (collectively, **"Defendants"**)], states and alleges as follows.

## I.    PARTIES

### A.    Plaintiff

1.    Upon information and belief, at all relevant times, Plaintiff resided in Thornton, Adams County, Colorado.

### B.    Defendant Hobby Lobby Stores, Inc. *("Hobby Lobby")*

2.    Upon information and belief, at all relevant times, **Defendant Hobby Lobby Stores, Inc.** *("Hobby Lobby")* was an Oklahoma corporation.

3. Upon information and belief, at all relevant times, Hobby Lobby's principal place of business had identical street and mailing addresses, located at 7707 Southwest 44th Street, Oklahoma City, Oklahoma 73179.

4. Upon information and belief, at all relevant times, Hobby Lobby was registered, and in good standing, with the Colorado Secretary of State.

5. Upon information and belief, at all relevant times, Hobby Lobby's Colorado registered agent was the Corporation Service Company, located at 1900 West Littleton Boulevard, Littleton, CO 80120.

6. Upon information and belief, at all relevant times, Hobby Lobby was an entity which was authorized to do, and was doing, business in Colorado.

7. Upon information and belief, at all relevant times, Hobby Lobby's Colorado business activities included, but were not limited to, owning, operating, managing, and/or maintaining commercial real estate, such as retail stores.

8. Upon information and belief, at all relevant times, Hobby Lobby performed these activities specifically regarding a Hobby Lobby store located in <u>Adams</u> County, in "The Grove" Subdivision, at 14130 Lincoln Street, Thornton, CO 80023 **("the Store")**.

9. Upon information and belief, at all relevant times, both the Store, as well as the adjacent parking lot **("the Parking Lot")**, were located on land which the <u>Adams</u> County Assessor's Office identified as Parcel Number <u>0157322101068</u> **("the Land")** *[collectively, the Store, the Parking Lot, and the Land will be referred to as "the Property"]*.

10. Upon information and belief, at all relevant times, including at the time of the **February 15, 2022** trip-and-fall incident giving rise to this case **(the "incident")**, the <u>Adams</u> County Assessor's Office identified the Property's owner as "Hobby Lobby Stores Inc c/o Ryan LLC."

C. **Defendant Ryan, LLC** *("Ryan")*

11. Upon information and belief, at all relevant times, **Defendant Ryan, LLC *("Ryan")*** was a Delaware limited liability company.

12. Upon information and belief, at all relevant times, Ryan's principal place of business had identical street and mailing addresses, located at 13155 Noel Road, Suite 100, Dallas, Texas 75240.

13. Upon information and belief, at all relevant times, Ryan was registered, and in good standing, with the Colorado Secretary of State.

2

14. Upon information and belief, at all relevant times, Ryan's Colorado registered agent was C T Corporation System, located at 7700 East Arapahoe Road, Suite 220, Centennial, CO 80112.

15. Upon information and belief, at all relevant times, Ryan was authorized to do, and was doing, business in Colorado.

16. Upon information and belief, at all relevant times, Ryan's Colorado business activities included, but were not limited to, purchasing, investing in, owning, selling, developing, and/or re-developing commercial real estate, such as retail stores.

17. Upon information and belief, at all relevant times, Ryan performed these activities regarding the Property.

18. Upon information and belief, at all relevant times, the Adams County Assessor's Office identified the Property's owner as "Hobby Lobby Stores Inc c/o Ryan LLC."

**D. Defendant Thornton Development, L.L.C. *("Thornton")***

19. Upon information and belief, at all relevant times, **Defendant Thornton Development, L.L.C. *("Thornton")*** was a Missouri limited liability company.

20. Upon information and belief, at all relevant times, Thornton's principal place of business had identical street and mailing addresses, located at 2127 Innerbelt Business Center Drive, Suite 200, St. Louis, Missouri 63114.

21. Upon information and belief, at all relevant times, Thornton was registered, and in good standing, with the Colorado Secretary of State.

22. Upon information and belief, at all relevant times, Thornton's Colorado registered agent was Capitol Corporate Services, Inc., located at 36 South 18th Avenue, Suite D, Brighton, CO 80601.

23. Upon information and belief, at all relevant times, Thornton was authorized to do, and was doing, business in Colorado.

24. Upon information and belief, at all relevant times, Thornton's Colorado business activities included, but were not limited to, purchasing, investing in, owning, selling, developing, and/or re-developing commercial real estate, such as retail stores.

25. Upon information and belief, at all relevant times, Thornton performed these activities regarding the Parking Lot, specifically.

26. Upon information and belief, at all relevant times, Thornton performed these activities regarding the adjacent property, as well, which similarly was located in Adams County, in "The Grove" Subdivision, but at no specific street address **(the "Adjacent Property")**.

27. Upon information and belief, at all relevant times, the Parking Lot may have been shared between, or partially belonged to, both the Property and the Adjacent Property.

28. Upon information and belief, at all relevant times, the Adjacent Property was located on land which the Adams County Assessor's Office identified as Parcel Number 0157322101069.

29. Upon information and belief, at all relevant times, the Adams County Assessor's Office identified the Adjacent Property's owner as "Thornton Development, L.L.C. c/o TSG Properties."

### E. Defendant TSG Asset Holdings, LLC d/b/a TSG Properties, Inc. *("TSG")*

30. Upon information and belief, at all relevant times, **Defendant TSG Asset Holdings, LLC *("TSG")*** was a Delaware limited liability company.

31. Upon information and belief, at all relevant times, TSG's principal place of business had a street address of 4425 Jamboree Road, Suite 250, Newport Beach, California 92660 and a mailing address of 565 Mountain Village Boulevard, Telluride, Colorado 81435.

32. Upon information and belief, at all relevant times, TSG was registered, and in good standing, with the Colorado Secretary of State, under TSG's own name.

33. Upon information and belief, at all relevant times, TSG's trade name, **"TSG Properties, Inc.,"** also was registered, and had an "effective" status, with the Colorado Secretary of State.

34. Upon information and belief, at all relevant times, TSG's Colorado registered agent was Tom Richards, located at the identical street and mailing addresses of 565 Mountain Village Boulevard, Telluride, Colorado 81435.

35. Upon information and belief, at all relevant times, TSG was authorized to do, and was doing, business in Colorado, under its own name and/or its trade name.

36. Upon information and belief, at all relevant times, TSG's Colorado business activities included, but were not limited to, purchasing, investing in, owning, selling, developing, and/or re-developing commercial real estate, such as retail stores.

37. Upon information and belief, at all relevant times, TSG performed these activities regarding the Parking Lot, specifically, as well as the Adjacent Property.

38. Upon information and belief, at all relevant times, the Parking Lot may have been shared between, or partially belonged to, both the Property and the Adjacent Property.

39. Upon information and belief, at all relevant times, the <u>Adams</u> County Assessor's Office identified the Adjacent Property's owner as "Thornton Development, L.L.C. c/o TSG Properties."

### F. <u>Subject Tort</u>

40. Upon information and belief, **one or more of the Defendants** committed one or more torts **["the tort(s)"]** arising out of their ownership of, investment in, financing of, and/or performance of operations, management, service, repair, cleaning, control, or other activities at and/or on the Store and/or the Property, forming the basis for this suit.

## II. <u>JURISDICTION AND VENUE</u>

41. Jurisdiction is proper pursuant to Article 6, § 9 of the Colorado State Constitution.

42. Pursuant to C.R.C.P. 98, venue is proper in <u>Adams</u> County because:

   a. **All of the Defendants** are <u>non</u>-residents of Colorado because each Defendant's principal place of business's street address is located <u>outside</u> Colorado; therefore, this action on a tort may be tried in any Colorado county where <u>any</u> of them may be found [C.R.C.P. 98(c)(1)]; and

   b. It is where **one or more of the Defendants** committed the tort(s) [C.R.C.P. 98(c)(5)].

## III. <u>GENERAL AND FACTUAL ALLEGATIONS</u>

43. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

44. The trip-and-fall incident occurred in the Parking Lot of the Property, near the Store, on or about **February 15, 2022**, around 1:30 p.m. **("the time of the incident")**.

45. Upon information and belief, immediately before the time of the incident, Plaintiff was a customer who had parked her car, exited it, and was walking across the Parking Lot to enter the Store and shop.

46. Upon information and belief, at the time of the incident, Plaintiff had reached a "transitional area," where the asphalt Parking Lot ended and a strip of concrete began before rising several inches to form the adjacent sidewalk leading to the Store entrance.

47. Upon information and belief, there is unevenness, an unreasonably wide separation, and/or an unreasonably deep dip, in this "transitional area" between the Parking Lot asphalt ending and the sidewalk concrete beginning **(the "dangerous condition")**.

48. Upon information and belief, the incident occurred when Plaintiff's left foot caught the asphalt/concrete transitional area, causing her to trip and fall to the ground, landing on her left arm and sustaining a left elbow fracture **(the "incident")**.

49. Upon information and belief, immediately before and at the time of the incident, Plaintiff had acted to protect herself from any potential danger, including, but not limited to:

   a. walking carefully and cautiously;
   b. wearing proper footwear with adequate tread;
   c. observing the surrounding environment for any potential dangers; and
   d. minimizing or eliminating distractions.

50. The incident caused Plaintiff to sustain bodily injuries.

51. Upon information and belief, shortly after the incident, Plaintiff presented to St. Anthony Hospital for emergency evaluation and treatment of her injuries.

52. Upon information and belief, Plaintiff developed other injuries, conditions, and symptoms due to the incident.

53. Upon information and belief, Plaintiff subsequently sought and obtained other treatment from various health care providers for her incident-related injuries, conditions, and symptoms.

54. Upon information and belief, as a result of her injuries caused by the incident, Plaintiff incurred damages and losses.

55. Plaintiff was not comparatively negligent in contributing to or causing either the incident or any of her injuries, damages, and losses.

56. At all relevant times, Plaintiff mitigated her injuries, damages, and losses resulting from the incident.

*[continued on the next page]*

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### Colorado Premises Liability Act [C.R.S. §13-21-115(3)(c)]:
### Liability to Invitee (*Against ALL Defendants*)

57. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

58. At the time of the incident, one or more of the Defendants qualified as a "landowner" of the Property, within the meaning of C.R.S. §13-21-115, because:

    a. each was an authorized agent or a person in possession of the Property; and/or

    b. each was a person legally responsible:

        i. for the condition of the Property; and/or

        ii. for the activities conducted or circumstances existing on the Property.

59. Upon information and belief, one or more of the Defendants owned, leased, sub-leased, and/or possessed the Parking Lot, the Store, the Land, and/or the Property.

60. Upon information and belief, one or more of the Defendants operated, managed, and/or maintained the Parking Lot, the Store, the Land, and/or the Property.

61. Upon information and belief, the Property (including the Store and the Parking Lot) was commercial/retail real estate which was open to members of the public.

62. Upon information and belief, the Store was a commercial/retail business which was open to members of the public.

63. Upon information and belief, one or more of the Defendants encouraged members of the public to shop at the Store.

64. Upon information and belief, shortly before the time of the incident, Plaintiff was a customer who was walking across the Parking Lot to enter the Store and shop.

65. Upon information and belief, by taking one or more of the following actions, one or more of the Defendants expressly and/or impliedly represented to the public, including Plaintiff, that they were requested, expected, or intended to enter onto or remain on the Property:

    a. owning, leasing, sub-leasing, and/or possessing the Store, the Parking Lot, the Land, and/or the Property;

    b. operating, managing, and/or maintaining the Store, the Parking Lot, the Land, and/or the Property;

    c. opening the Store to members of the public; and/or

      d.    encouraging members of the public to shop at the Store.

66. As a result, at the time of the incident, Plaintiff was an "invitee" on the Property, within the meaning of C.R.S. §13-21-115(3)(c), (5)(a).

67. Because Plaintiff was an "invitee," one or more of the Defendants owed Plaintiff a duty to use reasonable care to protect her against any dangers on the Property.

68. At the time of the incident, the Property contained a dangerous condition: namely, unevenness, an unreasonably wide separation, and/or an unreasonably deep dip, in the "transitional area" between the Parking Lot asphalt ending and the sidewalk concrete beginning.

69. This dangerous condition caused Plaintiff to trip and fall and, as a result, sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment and/or disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future loss of time; and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

70. One or more of the Defendants <u>actually</u> knew about this dangerous condition, <u>or</u>, as a person or entity using reasonable care, <u>should have</u> known about this dangerous condition.

71. One or more of the Defendants failed to use reasonable care to protect Plaintiff from injuries, damages, and losses resulting from this dangerous condition.

72. The failure to do so by one or more of the Defendants was a cause of Plaintiff's injuries, damages, and losses.

### SECOND CLAIM FOR RELIEF:
### Colorado Premises Liability Act [C.R.S. §13-21-115(3)(c)]:
### Liability to <u>Licensee</u> (*Against <u>ALL</u> Defendants*)

***[IN THE <u>ALTERNATIVE</u> to Plaintiff's <u>First</u> Claim for Relief]***

73. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

74. At the time of the incident, one or more of the Defendants qualified as a "landowner" of the Property, within the meaning of C.R.S. §13-21-115, because:

    a.    each was an authorized agent or a person in possession of the Property; and/or

    b.    each was a person legally responsible:

        i.    for the condition of the Property; and/or

        ii.    for the activities conducted or circumstances existing on the Property.

75. Upon information and belief, one or more of the Defendants owned, leased, sub-leased, and/or possessed the Parking Lot, the Store, the Land, and/or the Property.

76. Upon information and belief, one or more of the Defendants operated, managed, and/or maintained the Parking Lot, the Store, the Land, and/or the Property.

77. Upon information and belief, the Property (including the Store and the Parking Lot) was commercial/retail real estate which was open to members of the public.

78. Upon information and belief, the Store was a commercial/retail business which was open to members of the public.

79. Upon information and belief, one or more of the Defendants encouraged members of the public to shop at the Store.

80. Upon information and belief, shortly before the time of the incident, Plaintiff was a customer who was walking across the Parking Lot to enter the Store and shop.

81. Plaintiff's presentation to the Property to shop in the Store represented her entrance onto or remaining on the Property for her own convenience or to advance her own interest.

82. Upon information and belief, by taking one or more of the following actions, one or more of the Defendants gave permission or consent to the public, including Plaintiff, to enter onto or remain on the Property:

   a. owning, leasing, sub-leasing, and/or possessing the Store, the Parking Lot, the Land, and/or the Property;

   b. operating, managing, and/or maintaining the Store, the Parking Lot, the Land, and/or the Property;

   c. opening the Store to members of the public; and/or

   d. encouraging members of the public to shop at the Store.

83. As a result, at the time of the incident, Plaintiff was a "licensee" on the Property, within the meaning of C.R.S. §13-21-115(3)(b), (5)(b).

84. Because Plaintiff was a "licensee," one or more of the Defendants owed Plaintiff a duty to use reasonable care:

   a. with respect to a danger on the Property which one or more of the Defendants <u>created</u>, and about which they <u>actually</u> knew, <u>before</u> Plaintiff incurred any injuries, damages, or losses; and

9

   b. to warn about a danger on the Property which one or more of the Defendants did <u>not</u> create, but about which they <u>actually</u> knew, and which was <u>not</u> a danger that ordinarily would be present in the parking lot of a commercial/retail business, such as the Store.

  85. At the time of the incident, the Property contained a dangerous condition: namely, unevenness, an unreasonably wide separation, and/or an unreasonably deep dip, in the "transitional area" between the Parking Lot asphalt ending and the sidewalk concrete beginning *[as described above]*.

  86. This dangerous condition caused Plaintiff to trip and fall and, as a result, sustain injuries, damages, and losses, including, but not limited to: bodily injuries; permanent physical impairment and/or disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future loss of time; and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

  87. This dangerous condition *[as detailed above]* was <u>not</u> a danger that ordinarily would be present in the parking lot of a commercial/retail business, such as the Store, if one or more of the Defendants had:

   a. taken appropriate action to ensure the levels of the Parking Lot asphalt and the adjacent concrete were flat, even, and safe to use;

   b. taken appropriate action to ensure there was not an unreasonably wide separation in the "transitional area" between the Parking Lot asphalt ending and the sidewalk concrete beginning, such that it would be safe to use; and/or

   c. directed its employees and/or agents to perform these actions; and/or

   d. ensured that its employees and/or agents performed these actions properly.

  88. These appropriate actions would have included, but not been limited to:

   a. monitoring the levels of the Parking Lot asphalt and the adjacent concrete for deterioration and the development of issues (such as unevenness, dips in the walking surface, or the crumbling away of asphalt and/or concrete) that could injure people; and

   b. repairing or replacing the Parking Lot asphalt and/or the adjacent concrete to prevent such injury.

  89. One or more of the Defendants:

   a. <u>created</u> this dangerous condition *[by not performing the actions detailed above]*, and one or more of the Defendants <u>actually</u> knew about it, <u>before</u> Plaintiff incurred any injuries, damages, or losses; <u>or</u>

10

Exhibit A

      b. did <u>not</u> create this dangerous condition, but one or more of the Defendants <u>actually</u> knew about it, and it was <u>not</u> a danger that ordinarily would be present in the parking lot of a commercial/retail business, such as the Store *[if one or more of the Defendants had performed the actions detailed above]*.

90. One or more of the Defendants failed to use reasonable care:

      a. with respect to this dangerous condition which one or more of the Defendants <u>created</u> *[as detailed above]*, and about which one or more of the Defendants <u>actually</u> knew, <u>before</u> Plaintiff incurred any injuries, damages, or losses; <u>and/or</u>

      b. to warn about this dangerous condition, which one or more of the Defendants did <u>not</u> create, but about which one or more of the Defendants <u>actually</u> knew, and which was <u>not</u> a danger that ordinarily would be present in the parking lot of a commercial/ retail business, such as the Store *[if one or more of the Defendants had performed the actions detailed above]*.

91. The failure to do so by one or more of the Defendants was a cause of Plaintiff's injuries, damages, and losses.

## <u>THIRD CLAIM FOR RELIEF</u>:
### <u>Negligence</u> (*Against <u>ALL</u> Defendants*)

### *[IN THE <u>ALTERNATIVE</u> to Plaintiff's <u>First</u> <u>AND</u> <u>Second</u> Claims for Relief]*

92. Plaintiff incorporates by reference the paragraphs above, as if set forth fully here.

93. One or more of the Defendants owed a duty to Plaintiff to exercise reasonable care in maintaining the Property to keep it free of (and/or deal with and/or mitigate) any dangerous conditions.

94. At the time of the incident, the Property contained a dangerous condition: namely, unevenness, an unreasonably wide separation, and/or an unreasonably deep dip, between the end of the Parking Lot asphalt and the beginning of the sidewalk concrete *[as detailed above]*.

95. One or more of the Defendants breached their duty to Plaintiff by failing to exercise reasonable care in maintaining the Property *[by not performing the actions detailed above]*.

96. One or more of the Defendants' breach of their duty to Plaintiff caused the incident to occur.

97. One or more of the Defendants' breach of their duty to Plaintiff, resulting in the incident, caused Plaintiff sustain injuries, damages, and losses, including, but not limited to:

bodily injuries; permanent physical impairment and/or disfigurement; economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future loss of time; and non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience).

## V. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff, Carolyn Drotar, respectfully requests that judgment be entered in her favor, and against the Defendant [(1) Hobby Lobby Stores, Inc.; (2) Ryan, LLC; Thornton Development, L.L.C.; and (4) TSG Asset Holdings, LLC d/b/a TSG Properties, Inc.], in an amount, to be determined at trial, to fairly compensate Plaintiff for her injuries, damages, and losses, including, but not limited to:

- physical bodily injuries;
- permanent physical impairment and/or disfigurement;
- economic damages, including, but not limited to: past and future medical expenses (including medical bills, medical mileage, and out-of-pocket expenses) and past and future loss of time;
- non-economic damages (including mental anguish, pain and suffering, loss of enjoyment of life, and inconvenience);
- interest (including post-incident, pre-filing, and post-filing interest) per statute and as otherwise permitted under Colorado law;
- costs (including, but not limited to, court costs and expert witness fees);
- reasonable attorney's fees per statute and as otherwise permitted under Colorado law; and
- such other and further relief as the Court deems just and proper.

Dated: Thursday, November 2, 2023.

Respectfully submitted,

**LAW OFFICES OF DIANNE SAWAYA, LLC**

*s/ Alissa M. Peashka*
Nathan T. Mattison, Esq.
Alissa M. Peashka, Esq.
*Attorneys for Plaintiff*

<u>Plaintiff's address</u>:
c/o Law Offices of Dianne Sawaya, LLC
4500 Cherry Creek Drive South, Suite 1030
Denver, CO 8024

13

Exhibit A